1
2
3
4
5
6          IN THE UNITED STATES DISTRICT COURT FOR THE
7                    EASTERN DISTRICT OF CALIFORNIA
8
9    THEA MCKAY PETERS,                  )    1:08-CV-321  AWI SMS
                                          )
10                        Plaintiff,      )    ORDER ON DEFENDANT'S
         v.                               )    MOTION FOR SUMMARY
11                                        )    JUDGMENT
     CITY OF HURON, OFFICER J.P.          )
12   RICHWINE as an individual and in     )    (Doc. No. 25)
     his official capacity, and CITY OF   )
13   HURON OFFICER A. DIAZ,               )
                                          )
14                        Defendants.     )
                                          )
15   _____)
16
17
18       This case arises from the arrest of Plaintiff Thea McKay Peters ("Peters") by Defendant
California Highway Patrol Officer J.P. Richwine ("Richwine") for driving while intoxicated.
19
Peters filed suit in this Court and alleges claims under 42 U.S.C. § 1983 (for violations of the
20
Fourth and Fourteenth Amendments).  By stipulation, the City of Huron and its police officer, A.
21
Diaz, were dismissed with prejudice from this suit.  See Court's Docket Doc. Nos. 20, 22.  The
22
remaining defendant, Richwine, now moves for summary judgment and/or qualified immunity on
23
the claims alleged against him.  For the reasons that follow, the motion will be granted.
24
25
26                         **FACTUAL BACKGROUND**
27       Peters is a traveling nurse by profession.  PUMF No. 1.[1]  Richwine is a California
28
_____
       [1]"DUMF" refers to Defendants' Undisputed Material Facts, "PUMF" refers to Plaintiff's Undisputed
Material Facts, "PRDUMF" refers to Plaintiff's Response to Defendants' Undisputed Material Facts.

Highway Patrol ("CHP") officer and has been since 2005.  See DUMF No. 1.  On February 18, 2007, Peters was driving from San Francisco to Los Angeles when her van broke down and/or ran out of gas on Interstate 5 near the town of Huron.  See PUMF No. 1.  On February 18, 2007, Richwine was working his regular patrol on Interstate 5 when, around 5:00 p.m., he observed Peters's van parked on the shoulder of the road.  See PUMF No. 2; DUMF No. 2.  Richwine stopped to see if Peters needed assistance.[2]  DUMF No. 3.[3]  When Richwine first encountered Peters, he did not observe any criminal conduct on her part.  PUMF No. 3.  Peters told Richwine that she (Peters) had run out of gas.  DUMF No. 5.  Richwine pushed Peters's van to a safer location and arranged for AAA to bring her gasolene.  DUMF No. 6; see PUMF No. 2.  Richwine did not see Peters do anything between approximately 5:30 p.m. and 9:15 p.m. on February 18.  PUMF No. 4.

        After Peters's first encounter with Richwine, the engine in Peters's van quit running again, and she ended up stopping her vehicle at just about the same spot that Richwine had pushed her to earlier, that is, off the highway and obstructing no one.  PUMF No. 5.  When Peters's van broke down the second time, it was already nighttime, so she just crawled into the back of her van and went to sleep, waiting for daylight to come so she could get her van fixed.  PUMF No. 6.

        Later the same evening, Richwine was patrolling the same area and observed Peters's van parked in approximately the same position it was in when he left her earlier.  DUMF No. 7.  Between 9:00 and 9:30 p.m., see PUMF No. 7, Richwine again stopped to render assistance or to determine if the van had been illegally abandoned on the roadway.  DUMF No. 8.  Peters was asleep in the back of the vehicle, the van was not running, and the keys were not in the ignition.  PUMF Nos. 7, 11.[4]  When Richwine appeared at Peters's van (at night and in the dark), Peters

_____

[2]Providing assistance to persons stopped on the road is one of Richwine's primary job duties. DUMF No. 4.

[3]Plaintiff objects that DUMF Nos. 3 to 6 are ambiguous in terms of time.  From the memorandum in support of the motion and the other DUMF's, it is apparent that DUMF Nos. 3 to 6 refer to the first encounter between Peters and Richwine.

[4]DUMF No. 9 in part states that the keys were in Peters's possession.  As Peters rightly points out, the evidence cited in support of DUMF No. 9 does not address possession of the keys.  See Richwine Declaration at ¶ 4.

was startled by the light of his flashlight, and sat up from her prone position to see what was going on. PUMF No. 8. When Richwine encountered Peters the second time, he did not observe her engaging in any criminal activity. PUMF No. 12. There was no other person or passenger in the van. DUMF No. 10.

Richwine smelled alcohol and observed a plastic cup with a brown liquid in the driver's seat cup holder. DUMF No. 11. Richwine believed the liquid smelled like an alcoholic beverage. Id. Richwine asked Peters a few questions and then verbally abused her. PUMF No. 16. His questions confused her because she had just awoken from sleeping. Id. While talking to Peters, Richwine observed that she was having some difficulty standing upright, smelled like alcohol, and exhibited other signs of intoxication.[5] DUMF No. 12.[6] Peters admitted to Richwine that she had been drinking alcohol and that she had subsequently driven the van.[7] DUMF No. 13.[8] However, at no time on February 18 – or during the following morning hours – did Peters ever tell Richwine that she had been drinking and driving. PUMF No. 9. Further, Richwine did not see Peters actually driving her van at anytime on February 18. PUMF No. 10. Also, Richwine never saw Peters consume any alcohol in his presence. PUMF No. 13. After Richwine woke Peters from where she was sleeping in the back of her van, and questioned her about her recent activities, he still did not determine that she was doing anything illegal. PUMF No. 14.

Richwine administered several Field Sobriety Tests ("FST's"), including a Preliminary

---

[5]Specifically, Richwine declares, "During the conversation, Ms. Peters was unstable and had to brace herself against the van to stand up. She stumbled sideways and backwards a couple of times, without falling down, while speaking to me." Richwine Declaration at ¶ 6.

[6]Peters disputes this DUMF by stating her conduct was easily explainable due to having been awoken by Richwine, and that no legal authority has been submitted that the observations constitute an offense. These objections do not controvert the fact that Richwine made these observations. DUMF No. 12 is undisputed.

[7]Richwine acknowledges that it is not illegal to drive a vehicle after consuming alcohol, as long as the driver's blood alcohol level remains below the legal limit. PUMF No. 15.

[8]Peters objects that the DUMF is Richwine's testimony as to what she allegedly told him, the testimony is used for the truth of the matter asserted, and is the "definition of hearsay." Peters is wrong. Richwine can testify as to what Peters told him since such testimony constitutes and admission of a party opponent, which by definition is not hearsay. See Fed. R. Evid. 801(d)(2). The objection is overruled and DUMF No. 13 is undisputed.

Alcohol Screening ("P.A.S.") breath test, which led him to believe that Peters was intoxicated.[9]
DUMF No. 14.  Richwine also received additional information from Officer Heckman that at
least one witness, Fred Garza (the AAA driver), had smelled alcohol on Peters's breath and had
observed her driving the van.  See DUMF No. 15.[10]  Through his training and experience,
Richwine knew that drunk drivers posed a substantial risk of harm to themselves and the general
public.  DUMF No. 16.  Richwine was specifically aware of California Vehicle Code § 40300.5
which permits officers to arrest persons who are intoxicated and who are "in or about" a vehicle
that is obstructing a roadway.  See DUMF No. 17; PRDUMF No. 17; Cal. Veh. Code § 40300.5.
Richwine consulted with the Officer In Charge, Heckman, and with the on-call Sergeant and,
based in part on the consultation, arrested Peters on suspicion of DUI. See DUMF No. 18;
PRDUMF No. 18; Richwine Decl. at ¶ 8.

Richwine pulled Peters out of her van and arrested her.  PUMF No. 17.  He placed
handcuffs on Peters by twisting her right arm enough to cause pain to her shoulder.  Id.  Later,
when pulling her out of his police vehicle, Richwine caused Peters to fall to the ground, injuring
her knee.  Id.  Richwine took Peters to the Huron Police Station and gave her a series of sobriety
tests.  PUMF No. 18.[11]  Richwine then informed Peters that she was being charged with driving
under the influence of alcohol.  Id.  Richwine declares that his actions were in no way influenced
by Peters's race or any other similar criteria.  DUMF No. 19.

As soon as Peters got to Los Angeles, she went to the emergency room of the Good
Samaritan Hospital and had x-rays taken of her shoulder and knee.  PUMF No. 19.

In March 2007, the Fresno County District Attorney's Office notified Peters that they

---

[9]Peters failed the FST's and the results of the preliminary breath tests were .23 and .21.  See Richwine Decl. at ¶ 8(i).

[10]Peters objects that this DUMF is double hearsay.  However, the Court is considering the information as a component of what facts Richwine knew or reasonably believed he knew when he made the arrest; police officers may rely on otherwise inadmissible hearsay in order to determine probable cause.  See Hart v. Parks; 450 F.3d 1059, 1067 (9th Cir. 2006); Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004).

[11]Richwine declares, and attaches the results as exhibits, that two breath tests were given to Peters at the Coalinga CHP substation, not the Huron police station.  See Richwine Decl. at ¶ 10 & Exhibit B.  The tests indicate that they were administered by Officer Heckman, took place between 11:24 and 11:48 p.m., and resulted in readings of .22, .09, .19, .18, and .19.  See id.

would not be prosecuting her for DUI.  PUMF No. 20.[12]

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions of the declarations (if any), pleadings, and  discovery that demonstrate an absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of the suit under the governing law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of America Nat'l Trust & Savings Assn, 322 F.3d 1039, 1046 (9th Cir. 2002).  A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.  Anderson, 477 U.S. at 248; Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant.  Soremekun, 509 F.3d at 984.  Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of

---

[12]PUMF 21 states that the DMV set aside the suspension of Peters's license due to a lack of reasonable cause for DUI.  Richwine objects that the DMV finding cannot be used against him due to a lack of privity.  Since Peters has made an insufficient showing of privity, the Court will not consider PUMF 21.  See Skoog v. County of Clackamas, 469 F.3d 1221, 1230 (9th Cir. 2006); Willis v. Mullins, 2005 U.S. Dist. LEXIS 39888 (E.D. Cal. Dec. 21, 2005).  However, even if the Court considered PUMF 21, the result of this motion would not change.

evidence to support an essential element of the non-moving party's claim.  See James River Ins. Co. v. Schenk, P.C., 519 F.3d 917, 925 (9th Cir. 2008); Soremekun, 509 F.3d at 984; Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000).  If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Companies, 210 F.3d 1099, 1102-03 (9th Cir. 2000).  If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire & Marine, 210 F.3d at 1103.  The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. Pro. 56(e)).

The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Stegall v. Citadel Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Sanders v. City of Fresno, 551 F.Supp.2d 1149, 1163 (E.D. Cal. 2008); UMG Recordings, Inc. v. Sinnott, 300 F.Supp.2d 993, 997 (E.D. Cal. 2004).  "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Galen v. County of Los Angeles, 477 F.3d 652, 658 (9th Cir. 2007);

Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002).  Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006).  Additionally, the court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references.  See Southern Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).  If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment.  See Nissan Fire & Marine, 210 F.3d at 1103.

## FEDERAL QUALIFIED IMMUNITY

Qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Phillips v. Hust, 477 F.3d 1070, 1079 (9th Cir. 2007); Brittain v. Hansen, 451 F.3d 982, 987 (9th Cir. 2006).  The "concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made," and that it is "often difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation that he faces."  Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1049 (9th Cir. 2002).

A court employs a tiered analysis for determining qualified immunity.  See Saucier v. Katz, 533 U.S. 194, 200-02 (2001); Skoog v. County of Clackamas, 469 F.3d 1221, 1229 (9th

Cir. 2006); Brittain, 451 F.3d at 987.  However, lower courts need not strictly follow the tiered

sequence in analyzing qualified immunity and may dispose of the issue at step two without

addressing step one.  Pearson v. Callahan, 129 S.Ct. 808, 821 (2009); Moss v. United States

Secret Service, 572 F.3d 962, 968 n.5 (9th Cir. 2009).  Under the first step, the court determines

whether, "taken in the light most favorable to the party asserting the injury, do the facts show the

officer's conduct violated a constitutional right?"  Saucier, 533 U.S. at 201; Phillips, 477 F.3d at

1079; Skoog, 469 F.3d at 1229.  If the answer is "no," then the inquiry ends and the plaintiff

cannot prevail; if the answer is "yes," the court continues the analysis.  See Saucier, 533 U.S. at

201; Blankenhorn v. City of Orange, 485 F.3d 463, 471 (9th Cir. 2007); Johnson v. County of

L.A., 340 F.3d 787, 793-94 (9th Cir. 2003).

Under the second step, the court determines "whether the right was clearly established,"

and applies an "objective but fact-specific inquiry."  Fogel v. Collins, 531 F.3d 824, 833 (9th Cir.

2008); Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007); see Saucier, 533 U.S. at 202.  The

Court asks whether "the contours of the right were sufficiently clear that a reasonable official

would understand that what he is doing violates the right."  Saucier, 533 U.S. at 202; Phillips,

477 F.3d at 1079.  In particular, "the dispositive inquiry in determining whether a right is clearly

established is whether it would be clear to a reasonable officer that his conduct was unlawful in

the situation he confronted."  Saucier, 533 U.S. at 202; Skoog, 469 F.3d at 1229.  In making this

determination, the court considers the state of the law at the time of the alleged violation, but it is

unnecessary for the precise conduct in question to have been previously held unlawful.  See

Fogel, 531 F.3d at 833; Inouye, 504 F.3d at 712.  Further, the court considers the "information

possessed" by the officer at the time of his conduct.  See Anderson v. Creighton, 483 U.S. 635,

641 (1987); Inouye, 504 F.3d at 712.  If the officer could have reasonably, but mistakenly,

believed that his conduct did not violate a clearly established constitutional right, then the officer will receive qualified immunity.  See Saucier, 533 U.S. at 205-06; Skoog, 469 F.3d at 1229; Johnson, 340 F.3d at 794; Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001).  As a wholly objective inquiry, see Brittain, 451 F.3d at 988, the "'subjective beliefs' of the actual officer are . . .irrelevant."  Inouye, 504 F.3d at 712; see Anderson, 483 U.S. at 641.  Thus, qualified immunity applies "if 'a reasonable officer could have believed [the action] to be lawful, in light of clearly established law and the information the . . . officer[] possessed.'"  Lawrence v. United States, 340 F.3d 952, 956-957 (9th Cir. 2003); see also Hunter, 502 U.S. at 227.  Whether the law was "clearly established" and whether an officer could have a reasonable, albeit mistaken, belief that his conduct was lawful are questions of law for the court to decide when the pertinent material facts are undisputed.  See Franklin v. Fox, 312 F.3d 423, 437 (9th Cir. 2002); LaLonde v. County of Riverside, 204 F.3d 947, 953 (9th Cir. 2000); Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995); Act Up!/Portland v. Bagley, 988 F.2d 868, 873 (9th Cir. 1993).


1.   **Violation of the Fourth Amendment – False Arrest**

*Defendants' Argument*

Richwine argues that he did not illegally detain or arrest Peters.  During the second encounter, Richwine stopped to see if the van had been abandoned or if Peters needed assistance since the van was in the same spot as in the previous encounter, approximately 4 hours earlier.  When Richwine saw Peters lying in the back of the van, it was reasonable for him to see if she needed assistance.  Further, Richwine immediately smelled alcohol and saw an open container in the driver's seat cup-holder.  After asking what had happened since the prior encounter, Peters gave inconsistent stories, smelled of alcohol, and staggered around.  When responding to

questions, Peters admitted that she had driven.  She also admitted that she drank beer and rum, and had thrown away the rum bottle at the gas station.  There were no beer cans at the scene. Peters admitted she drove back to the current location on the shoulder of the road.  Also, the tow truck driver (Garza) informed officers that he smelled alcohol on Peters's breath before she left for the gas station, she drove past the exit for the gas station, and did not show up at the station during the time Garza waited for her.  Also, Peters was the sole occupant of the van and the only person who could have driven it given the adjusted position of the driver's seat.  Peters failed all of the Field Sobriety tests and blew a .23 and .21 on the P.A.S. test.  Peters was clearly drunk. Given the danger that drunk drivers pose, and the legislative mandate for officers to remove drivers from the roadways under Vehicle Code § 40300.5, Richwine reasonably arrested Peters.

Alternatively, the law is not clearly established as to whether a person being drunk, alone in a vehicle, who admits to have been drinking prior to driving the vehicle to current location has violated the law.  Richwine not only acted on his own suspicions, but also consulted two other officers.  Also, the law interpreting Vehicle Code § 40300.5 is sparse and provides little in the way of examples of what is or is not proper police conduct.  There is a policy of removing drunk drivers from the road and Richwine reasonably believed that § 40300.5 required the arrest.

Additionally, in responding to a request for additional briefing from this Court,[13] Richwine argues that probable cause existed under Penal Code § 647(f) for public intoxication. Courts have interpreted that provision as applying to persons who are found asleep in their vehicles along the side of the road.  Here, Peters was intoxicated (her blood alcohol content was more than twice the legal limit), she was in a vehicle parked along a public highway, and because of her condition she was unable to care for herself.  Therefore, probable cause existed.

---

[13]The Court ordered the parties to brief the issue of what effect, if any, Penal Code § 647(f) had on the case.

*Plaintiffs' Opposition*

Peters argues that Richwine had no probable cause to arrest her for driving under the influence because Richwine never saw her drive.  Richwine never touched the van to see if it was warm.  No one saw Peters drive that day. The presence of an alcoholic beverage does not show *driving* under the influence.  The failure of field sobriety tests does not show *driving* under the influence.  Vehicle Code § 40300.5(b) does not apply because Peters was not observed in or about a vehicle that was obstructing a roadway.  There was no probable cause to arrest Peters for DUI and no reasonable officer would have believed that there was.

With respect to Penal Code § 647(f), that section does not apply to this case.  There is no evidence that Peters was unable to exercise care for her own safety.  Even if Richwine relies on Peters's stumbling or bracing herself, that conduct could have been the result of her waking up since Peters had not slept for the previous 14 hours (as reflected in the police report), and it was Richwine that chose to have Peters be awake instead of continuing to sleep.  Further, there is no evidence that Peters was obstructing or preventing the free use of a roadway.  Peters's van was not in an operable condition, no one saw Peters acting in a very drunk condition, and Richwine had not been dispatched to investigate a possible drunk in a car.  Peters was simply asleep in the back of a van that was no longer operable.

*Probable Cause Standard*

"The Fourth Amendment requires police officers to have probable cause before making a warrantless arrest."  Ramirez v. City of Buena Park, 560 F.3d 1012, 1023 (9th Cir. 2009); see Beier v. City of Lewiston, 354 F.3d 1058, 1065 (9th Cir. 2004).  "Probable cause to arrest exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person

being arrested." Rodis v. City & County of San Francisco, 558 F.3d 964, 969 (9th Cir. 2009);

John v. City of El Monte, 515 F.3d 936, 940 (9th Cir. 2008).  Courts look to "the totality of the

circumstances known to the arresting officers, to determine if a prudent person would have

concluded there was a fair probability that the defendant had committed a crime." John, 515

F.3d at 940; see Hart v. Parks, 450 F.3d 1059, 1066 (9th Cir. 2006).  "The probable cause

standard is incapable of precise definition or quantification" and is "a fluid concept - turning on

the assessment of probabilities in particular factual contexts – not readily, or even usefully,

reduced to a neat set of legal rules." Rodis, 558 F.3d at 969.  "While conclusive evidence of guilt

is not necessary to establish probable cause, mere suspicion, common rumor, or even strong

reason to suspect are not enough." Ramirez, 560 F.3d at 1023.  Except for the element of

specific intent, "probable cause does not require the same type of specific evidence of each

element of the offense as would be needed to support a conviction." Rodis, 558 F.3d at 969.

"Police may rely on hearsay and other evidence that would not be admissible in a court to

determine probable cause." Hart, 450 F.3d at 1067.  Further, officers may "draw on their own

experience and specialized training to make inferences from and deductions about the cumulative

information available to them that might well elude an untrained person." John, 515 F.3d at 940;

Hart, 450 F.3d at 1067.  "As a corollary . . . of the rule that the police may rely on the totality of

facts available to them in establishing probable cause, they also may not disregard facts tending

to dissipate probable cause." Ramirez, 560 F.3d at 1023-24.  Nevertheless, the "fact that other

inferences are possible does not mean that there is a triable issue of fact as to whether there was

probable cause;" Hart, 450 F.3d at 1067, as "law enforcement officers do not have to rule out the

possibility of innocent behavior." Ramirez, 560 F.3d at 1024.  Further, probable cause may be

based on an officer's "reasonable mistake of fact," i.e. a reasonable mistake of fact will not

vitiate probable cause.  See Weinstein v. City of Eugene, 2009 U.S. App. LEXIS 15430, *2 (9th Cir. Or. July 10, 2009); Beier, 354 F.3d at 1065.  However, "[i]f an officer simply does not know the law, and makes a stop based on objective facts that cannot constitute a violation, his suspicions cannot be reasonable," i.e. "[p]robable cause cannot be established by an erroneous understanding of the law."  Beier, 354 F.3d at 1065; see also Weinstein, 2009 U.S. App. LEXIS 15430 at *2.  Additionally, "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."  Devenpeck v. Alford, 543 U.S. 146, 153 (2004); see also John, 515 F.3d at 940.  The officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."  Devenpeck 543 U.S. at 153.  That is, "probable cause supports an arrest so long as the arresting officers had probable cause to arrest the suspect for any criminal offense, regardless of their stated reason for the arrest."  Torres v. City of Los Angeles, 548 F.3d 1197, 1207 (9th Cir. 2008) (citing Devenpeck, 543 U.S. at 153-55); see Tatum v. City & County of San Francisco, 441 F.3d 1090, 1095 (9th Cir. 2006) ("the subjective reason that [the officer] arrested [the plaintiff] is irrelevant so long as the available facts suggested that [the plaintiff] was committing a crime"); Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006) (". . . a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest.").  However, "an arrest is still unlawful unless probable cause existed under a specific criminal statute."  Torres, 548 F.3d at 1207; see Tatum, 441 F.3d at 1095.  Finally, "where the material, historical facts are not in dispute, and the only disputes involve what inferences properly may be drawn from those historical facts, it is appropriate for [the] court to decide whether probable cause existed at the time [the officer]

arrested [the plaintiff]."  Peng v. Hu, 335 F.3d 970, 980 (9th Cir. 2003); see Hart, 450 F.3d at

1066-67.

*Discussion*

1.     California Vehicle Code § 40300.5

_____In California, generally "where an officer does not personally observe the driving element

of the offense [of driving under the influence], a warrantless arrest for drunk driving is invalid."

People v. Lively, 10 Cal.App.4th 1364, 1367 (1992).  However, Vehicle Code § 40300.5

"provides exceptions to the requirement that misdemeanor drunk driving must occur in the

arresting officer's presence."  Dyer v. Department of Motor Vehicles, 163 Cal.App.4th 161, 174

(2008); People v. Schofield, 90 Cal.App.4th 968, 975 (2001); Shaffer v. Department of Motor

Vehicles, 75 Cal.App.3d 698, 700 (1977).  California Vehicle Code § 40300.5 reads:

> In addition to the authority to make an arrest without a warrant pursuant to
> paragraph (1) of subdivision (a) of Section 836 of the Penal Code, a peace officer
> may, without a warrant, arrest a person when the officer has reasonable cause to
> believe that the person had been driving while under the influence of an alcoholic
> beverage or any drug, or under the combined influence of an alcoholic beverage
> and any drug when any of the following exists:
>
> (a) The person is involved in a traffic accident.
> (b) The person is observed in or about a vehicle that is obstructing a roadway.
> (c) The person will not be apprehended unless immediately arrested.
> (d) The person may cause injury to himself or herself or damage property unless
>     immediately arrested.
> (e) The person may destroy or conceal evidence of the crime unless immediately
>     arrested.

Cal. Veh. Code § 40300.5.  Further, § 40300.5 is to be "liberally interpreted to further safe roads

and the control of driving while under the influence of an alcoholic beverage or any drug in order

to permit arrests to be made pursuant to that section within a reasonable time and distance away

from the scene of a traffic accident. . . ."  Cal. Veh. Code § 40300.6; Corrigan v. Zolin, 47

Cal.App.4th 230, 234 (1996).

In arguing that he had probable cause to arrest Peters for DUI, Richwine's motion relies on § 40300.5(b), the "obstructing the roadway" provision.  Richwine is correct that there appears to be few cases that discuss or interpret § 40300.5(b).  However, the California Supreme Court has discussed this provision.  Prior to the additions of subparagraphs (c), (d), and (e), the California Supreme Court described § 40300.5 as follows: "Our Legislature has enacted an exception to the common law rule of Penal Code section 836, subdivision 1, for 'drunk driving' arrests made at or near an accident scene, or *when a vehicle is found protruding into the street* [footnote], but neither exception applies when, as here, a vehicle is lawfully parked."  Mercer v. Dept. of Motor Vehicles, 53 Cal. 3d 753, 761 (1991) (emphasis added).  The "footnote" was a citation to the applicable version of § 40300.5, which included the language, "observed by a peace officer in or about a vehicle which is obstructing a roadway, when the officer has reasonable cause to believe that the person had been driving while under the influence of an alcoholic beverage or any drug . . . ."  Id. at 761 n.3.  The precise issue of the meaning of "obstructing a roadway" was apparently not before the *Mercer* court so the sentence is arguably *dicta*.  Nevertheless, the *Mercer* court identified and discussed the statute,[14] stated in what circumstances the now section 40300.5(b) would apply, and held that it had no application to that case.  See id. at 761.  Under such circumstances and in the absence of contrary authority, the Court is constrained to follow *Mercer*.  Therefore, from *Mercer*, a vehicle is "obstructing a roadway" under § 40300.5(b) when the "vehicle is found protruding into the street."  Id.

Here, the evidence indicates that Peters's van was on the shoulder of the Interstate during the second encounter.  See DUMF Nos. 2, 6, 7.  Richwine had previously moved Peters's van to that particular section of the shoulder which he described as a "safer portion of the shoulder."

---

[14] *Mercer* also recognized § 40300.6's direction for a liberal interpretation.  Mercer, 53 Cal.3d at 761 n.3.

See Richwine Decl. at ¶¶ 3, 4.  Also, in reply, Richwine did not dispute Peters's undisputed fact

that the van was "off the highway and obstructing no one."  PUMF No. 5.  If the van was in a

"safer location" of the shoulder and "obstructing no one," then the van was not "protruding into

the street."  See Mercer, 53 Cal.3d at 761.  Therefore, there was no probable cause to arrest

Peters under Vehicle Code § 40300.5(b).  See John, 515 F.3d at 940; Mercer, 53 Cal.3d at 761;

PUMF No. 5; DUMF Nos. 2, 6, 7.

As for qualified immunity, a similar analysis applies.  The fourth amendment right to be

free from an arrest without probable cause is well established.  See McKenzie v. Lamb, 738 F.2d

1005, 1007 (9th Cir. 1984); see also Moreno v. Baca, 433 F.3d 633, 639 (9th Cir. 2005).  The

van was " off the highway [on the shoulder] and  obstructing no one."  PUMF No. 5.  There is

simply no evidence that Peters's van was protruding into the Interstate.  As such, a reasonable

officer could not have concluded that probable cause existed to arrest Peters under Vehicle Code

§ 40300.5(b).  See Saucier, 533 U.S. at 202, 205-06; Fogel, 531 F.3d at 833; John, 515 F.3d at

940; Inouye, 504 F.3d at 712; Mercer, 53 Cal.3d at 761; PUMF No. 5; DUMF Nos. 2, 6, 7.

Richwine's motion for summary judgment on this ground is denied.

2.      California Penal Code § 647(f)

In California, a person commits the misdemeanor offense of disorderly conduct if, among

other ways, that person:

> [] is found in any public place under the influence of intoxicating liquor, any drug,
> controlled substance . . .  in a condition that he or she is unable to exercise care for
> his or her own safety or the safety of others, or by reason of his or her being under
> the influence of intoxicating liquor, any drug, controlled substance . . . interferes
> with or obstructs or prevents the free use of any street, sidewalk, or other public
> way.

Cal. Pen. Code § 647(f).  An offense under § 647(f) occurs when a person:  "(1) is intoxicated (2)

in a public place and either (3) is unable to exercise care for his own safety or the safety of others

or (4) interferes with or obstructs or prevents the free use of any street, sidewalk or public way."
People v. Lively, 10 Cal.App.4th 1364, 1368-69 (1992).  "A public place has been defined to be
a place where the public has a right to go and to be, and includes public streets, roads, highways,
and sidewalks . . . ."  People v. Belanger, 243 Cal.App.2d 654, 658 (1966).  "[S]itting in an
automobile while intoxicated does not, as a matter of law, prevent one from being arrested for
intoxication in a public place.  Nor does being found asleep in a vehicle prevent an arrest for
public intoxication under section 647(f)."  People v. Cruz, 44 Cal.4th 636, 674 (2008) (citing
Belanger, 243 Cal.App.2d at 656, 658 and Mardis v. Superior Court, 218 Cal.App.2d 70, 72
(1963)).  As long as the defendant is "physically present in a public place," it is "immaterial
whether [the defendant] is exposed to public view . . . ."  Belanger, 243 Cal.App.2d at 657.  Also,
with respect to the third element, "the totality of the circumstances must be considered in
determining whether the intoxicated person can exercise care for his or her own safety or the
safety of others."  Lively, 10 Cal.App.4th at 1372.  Case law indicates that the greater the level of
intoxication, the more likely it is that the person will be unable to exercise care for his or her own
safety.  Cf. People v. Boren, 188 Cal. App. 3d 1171, 1173, 1177 (1987); In re William G., 107
Cal.App.3d 210, 212 (1980); People v. Blatt, 23 Cal.App.3d 148, 152 (1972); People v. Steeples,
22 Cal.App.3d 993, 995 (1972)[15]; Belanger, 243 Cal.App.2d at 656 with People v. Rich, 72
Cal.App.3d 115, 122 (1977).

Here, the evidence indicates that probable cause existed under § 647(f).  First, Peters was
found in a "public place," namely the shoulder of Interstate 5.  See Belanger, 243 Cal.App.2d at
658; DUMF Nos. 2, 6, 7; Richwine Decl. at ¶¶ 3, 4.  It does not matter that Peters was in the back
of the van asleep, nor does it matter that she may have been out of view.  See Cruz, 44 Cal.4th at

[15]Disapproved on other grounds by People v. Longwill, 14 Cal.3d 943, 952 n.5 (1975).

17

674; Belanger, 243 Cal.App.2d at 656, 658; Mardis, 218 Cal.App.2d at 72.

Second, there is no question that Peters was intoxicated.  The evidence shows that:   (1) Richwine could smell alcohol on Peter's breath as he spoke with her, (2) Peters admitted that she had been drinking; (3) Peters was unstable and had to brace herself against the van; (4) she stumbled sideways and backwards "a couple of times;" (5) Peters failed the FST's administered by Richwine; (6) the results of the two P.A.S. breath tests were .23 and .21; and (7) the results of two breath panels at the CHP Coalinga substation were .22, .09, .19 and .18 and .19.  See DUMF Nos. 11, 12, 13; Richwine Decl. ¶¶ 6, 7, 8, 10 & Exhibit B.

Finally, with respect to the ability of Peters to care for herself, Peters is correct that the evidence indicates that the van was inoperable.  Thus, there does not appear to have been the danger that she would immediately resume driving.  Nevertheless, the test is not whether Peters would endanger others on the road.  The element at issue is simply whether she is unable to exercise care for her own safety.  See Cal. Pen. Code § 647(f).

The level of Peters's intoxication is similar to the levels described in *Belanger*, *Boren*, *Blatt*, and *William G.*  In *Belanger*, after the officer woke the defendant (who was asleep in the front seat of his car), the officer "formed the opinion that the [defendant] was drunk and unable to properly care for himself or his own safety, based upon the strong odor of alcohol on his breath, his bloodshot eyes, the fact that he was unsteady on his feet, his face was flushed, and his speech slurred."  Belanger, 243 Cal.App.2d at 656.  In *Boren*, the defendant was unsteady on her feet, had red, watery and bloodshot eyes, had speech that was slow, thick and slurred, had a moderate odor of alcohol on her breath, and was unable to give her address or accurately point to where she lived.  Boren, 188 Cal. App. 3d at 1173.  In *Blatt*, an arrest was deemed appropriate under § 647(f), even though the defendant was in a store with her father (who owned the store),

where the defendant's words were abusive and not coherent, her speech was thick, her eyes did not focus, her head swayed back and forth, and her father said that she was "stoned." Blatt, 23 Cal.App.3d at 150-52.  In *William G.*, the defendant was "staggering very badly, very unsteady on his feet, his speech was slurred, eyes bloodshot, and there was a strong odor of alcoholic beverage on his person." William G., 107 Cal.App.3d at 212.  In the case at bar, there is no evidence regarding Peters's speech patterns or her eyes.  Nevertheless, Peters was unstable and had to brace herself against the van and even then would sway, she failed the field sobriety tests, she smelled of alcohol, and she blew nearly three times the DUI legal blood alcohol limit (.23 and .21) on the preliminary breath test.[16]  Further, Peters was found asleep in her van, which may well have been a result of the alcohol that she had ingested since alcohol appeared to be in the van (in the cup) and she still smelled of alcohol when she spoke to Richwine.  Finally, the van was parked on a stretch of an Interstate 5, which is a major roadway.  See Richwine Decl. at ¶ 8(j).  Given the volume of cars that will pass by at higher rates of speed, it is not safe to sleep in a vehicle on the shoulder of a major Interstate.  Peters would have also been in peril if she had decided to leave her van and walk to a store/for help.  If Peters could not even stand without bracing herself, could not stay awake, could not get herself away from Interstate 5, and could not blow less than .20 on an blood alcohol test, then Peters could not exercise care for her safety. The facts of this case would "lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." Rodis, 558 F.3d at 969; John, 515 F.3d at 940; Peng, 335 F.3d at 980; Cal. Pen. Code § 647(f); William G., 107 Cal.App.3d at 212;

---

[16]Peters offers other explanations for some of her behavior, e.g. she was still waking up.  However, "that other inferences are possible does not mean that there is a triable issue of fact as to whether there was probable cause;" Hart, 450 F.3d at 1067, as "law enforcement officers do not have to rule out the possibility of innocent behavior."  Ramirez, 560 F.3d at 1024.  There was probable cause to arrest Peters for violation of Penal Code § 647(f), even if she may have actually been tired.

Belanger, 243 Cal.App.2d at 656; see also Jaegly, 439 F.3d at 154; People v. Murrietta, 251 Cal.App.2d 1002, 1004-05 (1967).

Alternatively, even if probable cause did not exist, the facts regarding Peters's condition and her circumstances are sufficiently close to the circumstances in cases like *Belanger* and *William G.* that a reasonable officer in Richwine's position would not know that Richwine's conduct was clearly violating Peters's Fourth Amendment right against unreasonable seizure. See Saucier, 533 U.S. at 202, 205-06; Skoog, 469 F.3d at 1229; Johnson, 340 F.3d at 794. In other words, "a reasonable officer could have believed [Richwine's arrest of Peters] to be lawful, in light of clearly established law and the information [Richwine] possessed." Lawrence, 340 F.3d at 956-57. Sleeping off a state of heavy intoxication on the edge of an Interstate highway does not appear to reflect the ability to exercise reasonable care for oneself. Qualified immunity is appropriate.

In summary, the Court finds that probable cause existed to arrest Peters under Penal Code § 647(f). Alternatively, Richwine is entitled to qualified immunity on the issue of whether probable cause existed under Penal Code § 647(f). Summary judgment in favor of Richwine on Peters's false arrest claim will be granted.[17]

**2.      Violation of the Fourth Amendment – Excessive Force**

*Defendants's Argument*

Richwine argues that he did not use any force in effectuating the arrest. In fact, he did not touch Peters except for handcuffing her at the time of arrest and helping her up after she slipped

---

[17]To the extent that Peters argues that Penal Code § 647(f) is too vague to be enforced, the Ninth Circuit has rejected that argument. Budd v. Madigan, 418 F.2d 1032, 1034-35 (9th Cir. 1969).

off the seat at the CHP office.  Although Peters complains that she sustained injuries, she refused

to be examined by a doctor after Richwine took her to the hospital.  There is no evidence that

Peters suffered any injury of any kind do to any force used by Richwine.

### Plaintiffs' Opposition

Peters states that there is a disagreement as to how much force Richwine used against her

in making the arrest.  Where such a dispute exists, summary judgment must be denied.

### Legal Standard

All claims that law enforcement officers used excessive force, either deadly or non-

deadly, in the course of an arrest, investigatory stop, or other seizure of a citizen are to be

analyzed under the Fourth Amendment and its standard of objective reasonableness.  See Graham

v. Connor, 490 U.S. 386, 395 (1989); Drummund v. City of Anaheim, 343 F.3d 1052, 1056 (9th

Cir. 2003).  However, the analysis of excessive force and false arrest are distinct factual

inquiries.  Blankenhorn v. City of Orange, 485 F.3d 463, 477 (9th Cir. 2007); Beier v. City of

Lewiston, 354 F.3d 1058, 1064 (9th Cir. 2004).  As such, "establishing a lack of probable cause

to make an arrest does not establish an excessive force claim, and vice-versa."  Blankenhorn, 485

F.3d 477; Beier, 354 F.3d at 1064.  The pertinent question in an excessive force case is

whether the use of force was "objectively reasonable in light of the facts and circumstances

confronting [the officers], without regard to their underlying intent or motivation."  Graham, 490

U.S. at 397; Blankenhorn, 485 F.3d at 477.  The analysis of whether a specific use of force was

reasonable "requires a careful balancing of the nature and quality of the intrusion on the

individual's Fourth Amendment interests against the countervailing government interests at

stake."  Graham, 490 U.S. at 396; Blankenhorn, 485 F.3d at 477; Davis v. City of Las Vegas, 478

F.3d 1048, 1054 (9th Cir. 2007).  "We first assess the quantum of force used to arrest [the

plaintiff]" and then "measure the governmental interests at stake by evaluating a range of factors." Davis, 478 F.3d at 1054. Factors that are considered in assessing the government interests at stake include, but are not limited to, "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396; Blankenhorn, 485 F.3d at 477; Davis, 478 F.3d at 1054. Further, where it is or should be apparent that an individual is emotionally or mentally unstable, that is a factor that must be considered in determining the reasonableness of the force employed. See Drummond, 343 F.3d at 1058. "In some cases . . ., the availability of alternative methods of capturing or subduing a suspect may be a factor to consider." Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005). However, police officers "are not required to use the least intrusive degree of force possible" as long as the force actually used was reasonable. Forrester v. City of San Diego, 25 F.3d 804, 807 (9th Cir. 1994); see Gregory v. County of Maui, 523 F.3d 1103, 1107 (9th Cir. 2008). Reasonableness "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396; Drummond, 343 F.3d at 1058. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97; Drummond, 343 F.3d at 1058. Since "[n]ot every push or shove, even if it may seem unnecessary in the peace of the judge's chambers, . . . violates the Fourth Amendment," Graham, 490 U.S. at 396, "[n]either tackling nor punching a suspect to make an arrest necessarily constitutes excessive force." Blankenhorn, 485 F.3d at 477. "Force is excessive when it is greater than is reasonable under the circumstances." Santos v. Gates, 287

F.3d 846, 854 (9th Cir. 2002).  It is the plaintiff's burden to show that the force used by the

officer was objectively unreasonable.  See Jennings v. Jones, 499 F.3d 2, 11 (1st Cir. 2007);

Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 922 (9th Cir. 2002); Wing v. Britton,

748 F.2d 494, 497 (8th Cir. 1984).

*Discussion*

The argument under this section of the opposition is very brief and simply states that

there is a disagreement as to the amount of force used.  PUMF No. 17 is the only set of facts that

deals with the force used by Richwine.  PUMF No. 17, reads: "Richwine pulled [Peters] out of

her van and arrested her.  He placed handcuffs on [Peters] by twisting her right arm enough to

cause pain to her shoulder.  Later, when pulling her out of his police vehicle, Richwine caused

[Peters] to fall to the ground, injuring [her] knee."  Thus, it appears that Peters is relying on two

applications of force: (1) twisting her arm back far enough to cause pain while placing the

handcuffs, and (2) causing her to fall to the ground while exiting the police car.  Richwine

addresses these situations briefly in his declaration in support of summary judgment:  "I advised

Ms. Peters of her rights placed her in handcuffs and drove her to the CHP Office in Coalinga to

administer a breath test at [her] request.  When we arrived at the station, I opened her door and

placed my hand on the upper part of the door frame so that she would not hit her head while

getting up.  As she got out, she appeared to slip off the seat and land on the ground."  Richwine

Declaration at ¶ 9.

The problem with Peters's opposition is that she does not present specific facts/evidence,

see Fed. R. Civ. Pro. 56(e); Tucker, 515 F.3d at 1030, rather the evidence she submits is too

vague and ambiguous.  The Court cannot tell the quantum of force that was used in either

instance.   There is no description of how Richwine "pulled" Peters out of the patrol car.  The

Court does not know what it means that Richwine "caused" Peters to fall to the ground, especially given Richwine's description of the event (that he opened the door, placed his hand on the door frame, and Peters slipped as she got out). Conspicuously absent from the record is any account by Peters of how Richwine caused her to fall. For example, there is no evidence that Richwine pushed Peters to the ground or intentionally tripped her. Further, although the use of restraints that cause unnecessary pain may violate the Fourth Amendment, <u>Los Angeles County v. Rettele</u>, 550 U.S. 609, 615 (2007), the only evidence before the Court concerning the handcuffs is that Richwine placed Peters' hands behind her back and applied the handcuffs. There is no description of the amount of force used or the duration of the time in which Peters had pain, there is no meaningful description of how Richwine handcuffed her, and there is no indication that Peters told Richwine that she was in pain or that she told Richwine that she had a pre-existing condition that would be aggravated by the behind-the-back handcuffing. <u>Cf.</u> <u>Shaw v. City of Redondo Beach</u>, 2005 U.S. Dist. LEXIS 46361, *26-*32 (C.D. Cal. Aug. 18, 2005) (collecting and discussing cases in which material disputed factual issued had been found regarding excessive force handcuffing claims). Peters's description of Richwine placing her arms behind her back is little more than a routine handcuffing while effectuating a lawful arrest. <u>See</u> <u>id.</u> at *25 (citing <i>inter alia</i> <u>Davenport v. Rodriguez</u>, 147 F. Supp. 2d 630, 637 (S.D. Tex. 2001); <u>Palacios v. City of Oakland</u>, 970 F. Supp. 732, 741 (N.D. Cal. 1997)).

Also, Peters does not dispute the assertion that Richwine took her to the Coalinga hospital (at her request) but that she refused to be examined or treated at that hospital. <u>See</u> Richwine Decl. at ¶¶ 11-12. Peters states that she went to a hospital in Los Angeles and had x-rays taken, but she does not identify the results of those x-rays or specifically identify a diagnosed injury that may have been sustained from Richwine. <u>See</u> PUMF No. 19.

24

What Peters has done in opposition is similar to what occurred in *Arpin*. As in *Arpin*, Peters "does not set forth any specific facts disputing [the officer's] version of events." Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 922 (9th Cir. 2001). Instead, there are conclusory allegations that Richwine caused pain as he applied the handcuffs and that Richwine caused Peters to fall. Peter's "conclusory allegations unsupported by factual data are insufficient to defeat [Richwine's] summary judgment motion." Id. (citing Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)). Further, Peters's "claim of injury is equally unsupported as she does not provide any medical records to support her claim that she suffered injury" as a result of Richwine's conduct. Arpin, 261 F.3d at 922 (citing Foster v. Metropolitan Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990)). Peters "failed to meet her burden of proof of providing specific facts to show that the force used was unreasonable or that she sustained actual injuries;" summary judgment in favor of Richwine is appropriate. Arpin, 261 F.3d at 922; see also Fed. R. Civ. Pro. 56(e); Tucker, 515 F.3d at 1030; Jennings, 449 F.3d at 11; Wing, 748 F.2d at 497.


### 3.     Violation of the Fourteenth Amendment – Equal Protection

*Defendants's Argument*

Richwine argues that he detained and arrested Peters because she was drunk and in her van on the shoulder of the road. She had an open container of alcohol in the driver's side cup-holder, was the sole occupant of the van, and had the keys in her possession. As his declaration indicates, race had nothing to do with Richwine's decisions.

*Plaintiffs' Opposition*

Peters argues that Richwine is relying on his own self-serving declaration. Peters states that racial animus was indeed a factor in Richwine's decision to harass and arrest her.

Richwine's declaration goes to an ultimate fact that is best left for the jury.

*Legal Standard*

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003); Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001).  A plaintiff must show that the "defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Byrd v. Maricopa County Sheriff's Dept., 565 F.3d 1205, 1212 (9th Cir. 2009); Serrano, 345 F.3d at 1082.  That is, a plaintiff must show that the defendant "acted in a discriminatory manner and that the discrimination was intentional." Bingham v. City of Manhattan Beach, 341 F.3d 939, 948 (9th Cir. 2003); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000).  "Intentional discrimination means that a defendant acted at least in part because of a plaintiff's protected status." Serrano, 345 F.3d at 1082; Maynard v. City of San Jose, 37 F.3d 1396, 1404 (9th Cir. 1994).  In order to avoid summary judgment, a plaintiff "must produce evidence sufficient to permit a reasonable trier of fact to find by a preponderance of the evidence that the decision was racially motivated." Serrano, 345 F.3d at 1082; Bingham, 341 F.3d at 949.  However, evidence that the plaintiff and the defendant are of a different race/ethnicity combined with a disagreement as to the reasonableness of the defendant's conduct toward the plaintiff is alone insufficient to show a violation of the Equal Protection Clause. Bingham, 341 F.3d at 949.

*Discussion*

The Court does not see a constitutional violation.  First, Richwine has declared that he did not act because of Peters race or other protected status, that is, he did not intentionally

discriminate against Peters on the basis of her race.  See Serrano, 345 F.3d at 1082; Bingham, 341 F.3d at 948.  Second, the evidence indicates that when Richwine first encountered Peters, he actually pushed her van to a safer location and then called a tow truck to bring her gasoline.  See DUMF No. 6.  This conduct is hardly indicative of racial animus or discrimination.  Third, even assuming that Richwine is not an African-American,[18] the evidence would then indicate that Peters and Richwine are of a different race/ethnicity and there is a disagreement as to the reasonableness of Richwine's conduct toward Peters.  The Ninth Circuit has held that such evidence/circumstance does not show a violation of the Equal Protection Clause.  Bingham, 341 F.3d at 949.  Peters has provided no evidence that reasonably indicates racial discrimination in violation of the Equal Protection Clause.  Summary judgment in favor of Richwine on this claim is appropriate.

## CONCLUSION

Richwine moves for summary judgment on all claims against him.  With respect to Peters's Fourth Amendment unlawful arrest claim, summary judgment is appropriate because probable cause existed to arrest Peters for violation of California Penal Code § 647(f).  Alternatively, summary judgment is appropriate because a reasonable officer in Richwine's position would not have known that Peters's arrest violated the Fourth Amendment given the totality of the circumstances.

With respect to Peters's Fourth Amendment excessive force claim, summary judgment is appropriate because Peters has failed to meet her burden of producing specific evidence that

---

[18]Richwine's race/ethnicity is unknown.  The arrest report indicates that Peters's race/ethnicity is "Black."  See Richwine Declaration Exhibit A.

shows an objectively unreasonable application of force by Richwine.  Peters makes only conclusory allegations and does not sufficiently describe the force used by Richwine or support her claims of injury.

With respect to Peters's Fourteenth Amendment equal protection claim, summary judgment is appropriate because no evidence reasonably indicates that Richwine's conduct was motivated in any way by Peters's race/ethnicity.


Accordingly, IT IS HEREBY ORDERED that Defendant J.P. Richwine's motion for summary judgment is GRANTED and the Clerk is directed to CLOSE this case.


IT IS SO ORDERED.

**Dated:**   **November 19, 2009**   _____ **/s/ Anthony W. Ishii** _____
                                           CHIEF UNITED STATES DISTRICT JUDGE